UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| RICHARD McFEE, | |
|---|---|
| Plaintiff, | |
| v. | Civil Action No. 18-11158-MPK |
| DR. L. LUND, and FELICITAS FANDREYER, in their individual capacities, | |
| Defendants. | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

On April 27, 2020, Plaintiff Richard McFee ("McFee") filed a Third Amended Complaint ("Complaint") against defendants Yeh, Fandreyer, Lund, and Tidwell ("Defendants") in their individual capacities pursuant to *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971). (ECF No. 114). In Count I, McFee alleged that Defendants were deliberately indifferent to and refused to treat his "serious medical needs," including Crohn's disease, persistent bleeding from his rectum, and low magnesium levels. *Id*. ¶¶ 77-82. In Count II, McFee claimed he was transferred from the Federal Medical Center in Devens, Massachusetts ("FMC Devens") to another institution by Warden Spaulding and Dr. Yeh in retaliation for filing this lawsuit. *Id*. ¶¶ 83-87.

Defendants moved to dismiss McFee's Complaint, and on May 4, 2020, this Court entered a Report and Recommendation on Defendants' Motion to Dismiss, recommending dismissal of McFee's Eighth Amendment claim against defendant Yeh (the former clinical director of FMC Devens), and dismissal of McFee's claim of retaliation against all defendants. (ECF No. 115). Otherwise, this Court recommended denial of Defendants' motion. *Id*. McFee appealed to the

district court, which adopted this Court's Report and Recommendation.¹ (ECF No. 118). As a result, the only claims remaining before this Court are McFee's contention that Defendants Dr. Lund and Nurse Practitioner Fandreyer ("Defendants") were deliberately indifferent to his medical needs in violation of the Eighth Amendment. *Id*.

For the reasons set forth more fully below, judgment must enter in Defendants' favor. *First*, McFee failed to administratively exhaust his claims prior to filing this lawsuit, subjecting his Complaint to dismissal. *Second*, even if this Court considers McFee's claims on their merits, which it should not, his claim of deliberate indifference fails because of the medical care that he admits he received from Defendants.

## FACTS

### A.  Plaintiff Richard McFee

McFee arrived at FMC Devens on December 12, 2017. *See* Defendants' Statement of Undisputed Material Facts ("SOF") at ¶ 1. At times throughout his incarceration, McFee was housed in the Special Housing Unit ("SHU"). (SOF ¶ 2). He has a significant mental health history including inpatient, outpatient, and psychotropic treatment, and a history of angry, aggressive behavior and poor frustration tolerance. (SOF ¶ 3). His past medical history includes diabetes, Crohn's disease, and multiple intestinal surgeries, including "a right hemicolectomy with diverting end ileostomy and Hartmann's pouch and an active enterocutaneous fistula, short-gut (50 cm small bowel left by ileoscopy 7/8/16), hypomagnesemia, GERD, [V]itamin K deficiency, [V]itamin D deficiency, [r]heumatoid arthritis AVN bilateral femoral heads." (SOF ¶ 4).

---

¹ Thereafter, the parties consented to all proceedings in this Court. (ECF No. 122).

In addition to being cared for by medical providers at FMC Devens, McFee was under the regular care of a GI specialist because he had significant inflammatory bowel disease (Crohn's disease), and he was also treated by wound care specialists. (SOF ¶ 5). In considering whether to refer McFee to an outside consultant or specialist, his medical providers considered the availability of necessary care at FMC Devens, and whether McFee had a medical condition that exceeded what could be provided by the institution, or whether an emergency required McFee to be seen at an outside medical facility. (SOF ¶ 6). The final decision to send an inmate to an outside medical provider on a non-emergency basis was made by a Utilization Review Committee at FMC Devens, which is comprised of medical providers including nurses, mid-level providers, and doctors. *Id*.

**B.    Dr. Lucas Lund**

Dr. Lund graduated from Kirksville College of Osteopathic Medicine. (SOF ¶ 7). He began working for the Bureau of Prisons ("BOP") at FMC Devens in August of 2016. *Id*. In 2018, Dr. Lund provided medical care for inmates in the mental health unit ("N Unit") as well as the SHU, which is where he first encountered McFee. (SOF ¶ 8).

Before treating McFee, Dr. Lund reviewed McFee's medical history. (SOF ¶ 9). Dr. Lund describes McFee as "a fairly young man with some serious medical problems" who understandably was frustrated by them. (SOF ¶ 10). McFee had severe inflammatory bowel disease, many surgeries which included removal of some of his gut, and short bowel syndrome which caused issues for absorption and digestion. *Id*. Following these surgeries, McFee had some chronic wounds and active inflammation around his anus. *Id*. Dr. Lund considered McFee to be a complex patient, whose borderline personality disorder caused complications to his care. *Id*.

Yet, Dr. Lund took McFee's concerns seriously. (SOF ¶ 11). At one point, because McFee had made frequent complaints, Dr. Lund requested that McFee be moved from the SHU to the N

Unit, where nursing was available 24 hours per day to assess him. *Id*. In July of 2018, after returning from a trip to the emergency room at an outside hospital, McFee was placed in the PA Unit, which is a skilled nursing unit, or hospital unit, providing the highest level of care at FMC Devens. *Id*.

### C. Nurse Practitioner Felicitas Fandreyer

Nurse Practitioner ("NP") Fandreyer received her nursing degree from Mount Wachusett Community College. (SOF ¶ 12). After receiving her degree, she worked for the Commonwealth of Massachusetts Department of Corrections, while also working toward earning her nurse practitioner degree. *Id*. NP Fandreyer began working for the BOP in November of 2016. (SOF ¶ 13). At the BOP, nurse practitioners are considered to be, and are referred to as, mid-level providers. *Id*. In 2018, NP Fandreyer cared for inmates in the SHU as part of her medical rotation. (SOF ¶ 14).

When she began treating McFee, NP Fandreyer reviewed his medical record in an effort to develop a treatment plan for him. (SOF ¶ 15). NP Fandreyer considered McFee to be "medically complicated," and someone for whom she tried her best to provide medical care. *Id*. McFee had several surgeries, infections, and was noncompliant with his treatment, often refusing any medical assistance from his providers. *Id*. Despite his noncompliance, NP Fandreyer took measures to ensure McFee received the treatment he required. (SOF ¶ 16). When McFee was housed in the SHU and was noncompliant with his treatment for his magnesium levels, NP Fandreyer ordered that his medication be administered on "pill line." *Id*. In the SHU, a "pill line" order means a

nurse would go to McFee's cell, hand him his medication, and watch him take it in order to allow his medical providers to monitor his medication compliance.[2]  *Id*.

## **LEGAL STANDARD**

Summary judgment is appropriate if the record, viewed in the light most favorable to the nonmoving party "discloses no genuine issue of material fact and thus demonstrates that the moving party is entitled to a judgment as a matter of law." *Zabala-De Jesus v. Sanofi-Aventis Puerto Rico, Inc.*, 959 F.3d 423, 427-428 (1st Cir. 2020) (quoting *Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir. 2006) (internal quotations omitted)); *see also* Fed. R. Civ. P. 56.  On summary judgment, a Court does not weigh the facts, but instead determines whether the evidence "is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Rios Colon v. United States,* 928 F.Supp.2d 376, 382 (D. Puerto Rico 2012) (citing *Leary v. Dalton*, 58 F.3d 748, 751 (1st Cir. 1995)); *see also Rivera-Rivera v. Medina & Medina, Inc.*, 898 F.3d 77, 87 (1st Cir. 2018).  A dispute is "genuine" if a reasonable factfinder could find in favor of the nonmoving party. *Burgos Martinez v. City of Worcester,* F.Supp.3d --, 2020 WL 6909744 at *4 (D. Mass. Nov. 24, 2020) (citing Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994).  A material fact is one with the "potential of changing a case's outcome." *Doe v. Trustees of Boston College*, 892 F.3d 67, 79 (1st Cir. 2018).

The nonmoving party is entitled "to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, and all internal conflicts in the evidence resolved favorably to him."  *Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932, 937 (1st Cir. 1987) (case citation omitted).  "The precincts patrolled by Rule 56 admit of no

---

[2] At times McFee was provided certain "self-carry" medications, which the inmate administers himself.  (SOF ¶ 16).

5

room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the carapace of the cold record. Although the evidence manifesting the factual dispute needs to be "substantial" in the sense that it looms as sufficient to require a factfinder to resolve the parties' differing versions of the truth at trial, it need not be clearly preponderant." *Id*. (quoting *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), cert. denied, 425 U.S. 904, 96 S.Ct. 1495 (1976)).

Nonetheless, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986) (citations omitted). Summary judgment is appropriate where the nonmoving party rests entirely upon "conclusory allegations, improbable inferences, and unsupported speculation" on any essential element of the claim. *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). This is so "[e]ven in cases where elusive concepts such as motive or intent are at issue." *Id*. (case citations omitted). To avoid "the swing of the summary judgment scythe," a plaintiff must adduce specific facts showing that a trier of fact could reasonably find in his favor, *Justiniano v. Walker,* 986 F.3d 11, 26 (1st Cir. 2021) (citing *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003)). A court need not "take at face value" a party's "subjective beliefs," even if offered in the form of testimony, if those subjective beliefs are "conclusory," "self-serving," and lack factual support in the record. *Irobe v. United States Dept. of Agriculture*, 890 F.3d 371, 381 (1st Cir. 2018) (citing *Torrech-Hernández v. Gen. Elec. Co.*, 519 F.3d 41, 47 n.1 (1st Cir. 2008)).

**ARGUMENT**

I. **This Court Lacks Jurisdiction To Consider McFee's Claims Because He Failed To Administratively Exhaust His Claims Before Bringing Suit**

   A. **The PLRA And Administrative Exhaustion**

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citing *Wilson v. Seiter*, 501 U.S. 294, 299 n. 1 (1991)). Unexhausted claims are subject to dismissal. *Medina-Claudio v. Rodríguez-Mateo*, 292 F.3d 31, 36 (1st Cir. 2002). "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Proper exhaustion, in turn, "demands compliance with [a penal institution]'s deadlines and other critical procedural rules." *Id*. at 90. Thus, to meet the requirement of proper exhaustion, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Acosta v. U.S. Marshals Serv.*, 445 F.3d 509, 512 (1st Cir.2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir.2002)).

"[F]ailure to exhaust is an affirmative defense under the PLRA." *Jones v. Bock*, 549 U.S. 199, 216 (2007). As such, it "must be raised and proved by the defense." *Cruz-Berríos v. Gonzáles-Roserio*, 630 F.3d 7, 11 (1st Cir.2010) (citing *Jones*, 549 U.S. at 216). The final determination of "[w]hether an inmate has [exhausted his administrative remedies] presents a question of law, although the answer may depend on disputed factual issues." *Beltran v. O'Mara*, 405 F.Supp.2d 140, 149 (D. N.H. 2005) (citing *Snider v. Melindez*, 199 F.3d 108, 113 (2d Cir.

7

1999); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003)).

Courts are not at liberty to create exceptions to the PLRA's exhaustion requirement unless such remedies are "unavailable," and a court may not excuse a failure to exhaust even taking "special circumstances" into account. *Ross v. Blake*, 578 U.S. 1174, 1856-1857 (2016); *see also Williams v. Correction Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) ("In *Ross*, the Court held that, aside from the significant textual qualifier that the remedies must indeed be available to the prisoner, there are no limits on an inmate's obligation to exhaust – irrespective of any special circumstances" (internal quotation marks omitted)); *White v. Spaulding*, No. 19-11102-FDS, 2019 WL 2331629, *1 (D. Mass. May 31, 2019) (dismissing plaintiff's claim for failure to exhaust "even assuming for present purposes that plaintiff has adequately pleaded deliberate indifference" to his serious medical conditions.). An administrative procedure may be unavailable under certain circumstances, including "with officers unable or consistently unwilling to provide any relief to aggrieved inmates," or if "administrative officials have apparent authority, but decline to exercise it." *Ross*, 578 U.S. at 1859 (case citations omitted). In those rare cases, exhaustion is not required. *Id*. (outlining three circumstances when exhaustion is not required) (case citations omitted).

**B. Bureau of Prisons' Administrative Remedy Procedure**

Federal inmates fulfill the PLRA's exhaustion requirement by filing grievances through the Bureau of Prison's ("BOP") four-step administrative remedy procedure. (SOF ¶ 17); *see also* 28 C.F.R. § 542, Subpart B. An inmate may seek formal review of any aspect of his confinement by presenting the issue informally to staff, and staff must attempt to resolve the issue. 28 C.F.R. § 542.13 (a); SOF ¶ 18. If the complaint cannot be resolved informally, the inmate may then submit a formal written Administrative Remedy Request to the Warden, on a designated form, within twenty days of the event that triggered his complaint. *Id*. An inmate can contest a

8

dissatisfactory response from the Warden by filing an appeal with the Northeast Regional Director of the BOP within twenty calendar days of the date the Warden signed the response. 28 C.F.R. § 542.15; SOF ¶ 19. No complaint raised through the administrative remedy process is considered fully exhausted until considered by the Bureau of Prisons' Office of General Counsel ("OGC"). 28 C.F.R. §§ 542.14-542.15; *Strong v. Lappin*, No. 90-CV-3522, 2010 WL 276206, at * 4 (E.D.N.Y. 2010) ("Until the BOP's Central Office considers the appeal, no administrative remedy is considered to be fully exhausted."); SOF ¶ 20.

Administrative remedy filings made by a federal inmate are recorded in SENTRY, the BOP's electronic inmate management system. (SOF ¶ 21). Every grievance submitted by an inmate is entered into SENTRY, which contains a complete history of administrative remedy filings filed by federal inmates. *Id*. This includes filings an inmate might make while incarcerated at any BOP facility, and SENTRY will indicate whether an inmate files a request for administrative remedy with the institution, Regional Office, or Central Office/OGC. *Id*.

### C. While In Federal Custody McFee Files 99 Administrative Remedy Requests

McFee arrived at FMC Devens on December 12, 2007, and remained at FMC Devens until being re-designated to FMC Lexington, Kentucky on December 27, 2018. (SOF ¶ 22). While in federal custody, McFee filed at least 99 administrative remedy requests. (SOF ¶ 23). Seventeen (17) of these administrative requests were filed by McFee while he was designated to FMC Devens, including 6 grievances submitted to the Warden, 8 appeals filed with the Northeast Regional Director, and 3 appeals filed with BOP's OGC. *Id*. Of three appeals McFee attempted to file with OGC during his designation to FMC Devens, all were rejected for failure to comply with the rules of the BOP's Administrative Remedy Program. *Id*. Notably, however, at FMC Devens, McFee successfully exhausted administrative remedies for matters unrelated to this case.

9

(SOF ¶ 24).

Prior to first filing suit on May 25, 2018, McFee failed to exhaust his administrative remedies regarding the claims set forth in his Complaint. (SOF ¶ 25). That the claims set forth in the Complaint allege serious medical conditions do not relieve McFee of his obligation to exhaust. *Rios v. United States*, Civil Action No. 14-40171-IT, 2016 WL 1212530, at *6 (D. Mass. Feb. 26, 2016) (citing *Leja v. Sabol*, 487 F.Supp.2d 1, 2 (D. Mass. 2007)). "Dismissal, rather than a stay of proceedings, is appropriate where a defendant demonstrates that an inmate failed to exhaust his administrative remedies prior to filing suit." *Rios*, 2016 WL 1212530 at *6 (citing *Medina-Claudio*, 292 F.3d at 36).

Although McFee alleges that his efforts to administratively exhaust his claims were thwarted by officers at FMC Devens (ECF No. 114), a reasonably jury could not find in his favor based on McFee's self-serving statements and conclusory allegations, in light of the undisputed fact that McFee managed to file 99 administrative remedy requests during his BOP incarceration, 17 of which he filed during the 12 months he was incarcerated at FMC Devens. For an inmate who was as vocal about his medical care as McFee was, his lack of *any* complaint– to medical providers or anyone else – that for some reason in *this* particular case officers at FMC Devens suddenly refused to accept the one administrative remedy request that was a prerequisite for filing this lawsuit is asks this Court to draw an improbable inference, and one for which a reasonably jury would not reasonably find in McFee's favor.

Because McFee failed to exhaust his administrative remedies prior to filing his Complaint as required by the PLRA, this Court lacks jurisdiction to consider his claims, his Complaint must be dismissed, and judgment must enter in favor of Defendants.

## II. McFee's Complaint Fails To State A Claim Of Deliberate Indifference

Even if this Court considers McFee's Complaint on its merits, which it should not, judgment must enter in favor of Defendants. McFee claims that Dr. Lund and NP Fandreyer acted in violation of his constitutional rights by providing him with inadequate health care for his serious medical needs. The record and evidence before this Court demonstrates otherwise.[3]

### A. The Eighth Amendment

The Eighth Amendment of the United States Constitution guarantees that prisoners shall not be subjected to cruel and unusual punishments. "Prison officials ... violate the Eighth and Fourteenth Amendments' prohibition against 'cruel and unusual' punishments when they exhibit 'deliberate indifference' to a detainee's serious medical needs." *Perry v. Roy,* 782 F.3d 73, 78 (1st Cir. 2015) (citing *Feeney v. Corr. Med. Servs.*, 464 F.3d 158, 163 (1st Cir. 2006); *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). Deliberate indifference "entails something more than mere negligence…" *Farmer v. Brennan*, 511 U.S. 825, 835 (1970). "Eighth Amendment liability requires more than ordinary lack of due care for the prisoner's interests or safety." *Id.* (case citations and quotations omitted). "Deliberate indifference to serious medical needs of prisoners

---

[3] This is McFee's second attempt at litigating claims of inadequate medical care by BOP medical providers before a federal district court. *See McFee v. Jordan et al.*, No. 6:17-cv-3140-MDH-P (W.D. Mo. Jan. 29, 2018), attached hereto as Exhibit B. In his prior case, the court dismissed McFee's complaint, holding that McFee was provided with appropriate medical care regarding treatment of his Crohn's disease and his ostomy wound. *Id.*, at ECF No. 37. To the extent that the allegations in the Complaint *sub judice* are substantially the same as those McFee made in the Western District of Missouri, and this Court should similarly find that McFee's claims are without merit and should be dismissed. *Andrews-Clarke v. Lucent Technologies, Inc.*, 157 F. Supp. 2d 93 (D. Mass. 2001) (The doctrine of *res judicata* applies when there is "(1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits.").

constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Unitt v. Spencer*, No. 17-11468-RGS, 2020 WL 1139881, at *2 (D. Mass. Mar. 9, 2020) (case citations and internal quotations omitted). Substandard treatment, even to the point of malpractice, does not constitute deliberate indifference. *Layne v. Vinzant*, 657 F.2d 468, 474 (1st Cir. 1981).

In order "to prove an Eighth Amendment violation, a prisoner must satisfy both of two prongs: (1) an objective prong that requires proof of a serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need." *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) (citing *Estelle*, 429 U.S. at 106; *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987)). A prisoner must prove more than "an inadvertent failure to provide adequate medical care," *Estelle*, 429 U.S. at 105, or a mere "disagreement[ ] between [himself] and [his] doctors about the proper course of [his] medical treatment," *Kosilek*, 774 F.3d at 83 (quoting *Watson*, 984 F.2d at 540). Regarding the latter, it is well established that the Eighth Amendment "does not impose upon prison administrators a duty to provide care ... of the prisoner's choosing." *Id*. at 82 (citing *Ferranti v. Moran*, 618 F.2d 888, 891 (1st Cir. 1980)), and "a claim of inadequate medical treatment which reflects no more than a disagreement with prison officials about what constitutes appropriate medical care does not state a cognizable claim under the Eighth Amendment." *DesRosiers v. Moran*, 949 F.2d 15, 20 (1st Cir. 1991).

### B. The "Objective Prong" Of The Deliberate Indifference Test

The objective prong of the deliberate indifference test evaluates the seriousness of the risk of harm to an inmate's health. There must be "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" *Farmer*, 511 U.S. 825, 843(1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). A medical need is "serious" if it has been diagnosed by a physician as mandating treatment, or is so obvious that even a lay person would recognize a

need for medical intervention. *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 497 (1st Cir.2011); *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir.1990), cert. denied, 500 U.S. 956 (1991).

As set forth above, Defendants do not dispute that McFee was medically complex: he suffers from several medical conditions, received extensive care at FMC Devens for his medical needs, and was sent to many specialists, including wound care consultant and GI specialists, to receive treatment at outside hospitals. Thus, for purposes of this motion only, Defendants agree that McFee's medical condition constitutes a serious medical need and establishes the objective prong of the deliberate indifference test. *See e.g. Perez v. NH State Prison Warden*, Civil No. 14-cv-492-LM, 2015 WL 2354470, at *2 (D.N.H. May 14, 2015) (post-surgical care of a wound suffices to allege a serious medical need).

### C. Based Upon The Medical Care That McFee Was Provided, He Cannot Meet The "Subjective Prong" Of The Deliberate Indifference Inquiry

To satisfy the subjective prong and demonstrate deliberate indifference, which has been described as a "culpable state of mind," *Perry*, 782 F.3d at 78, and "a narrow band of conduct," *Kosilek*, 774 F.3d at 83 (citation omitted), a prisoner must generally produce "evidence that the absence or inadequacy of treatment is *intentional*," *Perry*, 782 F.3d at 79 (citing *Estelle*, 429 U.S. at 105; *Watson v. Caton*, 984 F.3d 537, 540 (1st Cir. 1993)) (emphasis added). Deliberate indifference may also be exhibited "by a wanton disregard [of] a prisoner's needs, [when] such disregard [is] akin to criminal recklessness, requiring consciousness of impending harm, easily preventable." *Kosilek*, 774 F.3d at 83 (quoting *Battista v. Clarke*, 645 F.3d 449, 453 (1st Cir. 2011); *Watson*, 984 F.2d at 540) (internal quotation marks omitted)). Here, McFee's claims against Defendants undoubtedly fail. The subjective prong of the deliberative indifference tests relies entirely on whether Defendants *purposefully* neglected McFee's medical condition, finding

13

"purposeful intent" in the absence or inadequacy of his treatment. *Perry*, 782 F.3d at 79 ("an inadvertent failure to provide adequate medical care" is not a constitutional violation). This Court cannot make such a finding – not only was McFee extensively treated for his medical needs, but the record is devoid of any evidence that McFee's treatment was inadequate, criminally reckless, or in wanton disregard of McFee's medical needs, nor can there be any such evidence in this case.

While McFee was cared for by a number of different BOP medical providers throughout his incarceration in the BOP, Defendants first began to care for and treat McFee beginning on or about April 28, 2018, when he was placed in the SHU at FMC Devens. (SOF ¶ 26). The objective medical evidence before this Court – records that were developed contemporaneously with McFee's care – demonstrates that at all times relevant to McFee's Complaint, he received extensive, ongoing medical care from all of his BOP providers. During his incarceration with the BOP, 10,403 pages of medical records were generated documenting McFee's medical care from January 2016 through July 2020. (SOF ¶ 27). Beginning in April of 2018 until the time of his transfer from FMC Devens in December 2018, the time period relevant to McFee's Complaint against Defendants, he was seen by Defendants for medical treatment at least 77 times over the course of 8 months.[4] (SOF ¶ 28). Additionally, Defendants (collectively) saw McFee during daily rounds in SHU, ordered medications and laboratory testing for him, reviewed reports and results from medical consultations McFee had with specialists, and reviewed and co-signed medical records documenting his visits with other medical providers.[5] (SOF ¶ 29). On the number of

---

[4] Not every interaction that Defendants had with McFee were documented in a medical record or note if there were no issues. (SOF ¶ 28).

[5] It is important to note that McFee was not permanently housed in the SHU from April 28, 2018, through and including December 28, 2018, nor does he so allege. But even if he were,

14

medical visits alone, a reasonable jury could not find that Defendants were deliberately indifferent to McFee's medical needs, or that they purposefully failed to treat him.

Nonetheless, the evidence before this Court supports a finding that McFee's claims are without merit, and that Defendants were not deliberately indifference to McFee's medical needs. At all times relevant to his Complaint, and even when faced with McFee's noncompliance with his medical treatment, Defendants continually evaluated, treated, and counseled McFee about his medical condition, sent him to outside hospitals and specialists when necessary, followed up on his medical complaints, took steps to ensure that he complied with medical treatment, and made every effort to provide medical treatment to him. (SOF ¶ 30). The medical records are replete with follow-up visits, and instances where Defendants ordered, continued, or changed McFee's medications to address his ongoing medical needs. (SOF ¶ 31). Indeed, because of Defendants' care and treatment, and despite McFee's serious medical issues, there were times when McFee had no medical complaints to report to Defendants at follow-up visits. (SOF ¶ 32).

As the record amply demonstrates, McFee was medically complex, but Defendants did their level best to treat him, despite the difficulties presented to them in doing so, including the difficulties presented by McFee's borderline personality disorder which caused complications to his care. (SOF ¶ 33). Indeed, McFee often refused medical assistance, or was noncompliant with his treatment, undoubtedly leading to some of the medical difficulties he experienced. (SOF ¶ 34). But Defendants nonetheless took McFee's concerns seriously, at times requested that he be moved to a unit where nursing was available 24 hours per day, and ordered that his medications be on

---

the number of visits he had with Defendants indicates that McFee would have been seen by Dr. Lund or NP Fandreyer an average of 9.6 times per month.

"pill line" to allow his providers to monitor his medication compliance and ensure McFee took the medications he needed. (SOF ¶ 35).

Although McFee alleges that Defendants failed to treat him, an allegation that lacks any factual support, at best his allegations reflect his disagreement about specific medical decisions made, or treatment provided by, Defendants. A reasonably jury could not find that Defendants purposefully failed to treat McFee's medical conditions, and McFee cannot satisfy the subjective test for deliberate indifference to his medical needs. As a general principle, the fact that a prison doctor sees and treats an inmate normally establishes lack of indifference to his medical needs. *Nunn v. Busse*, 2010 WL 1710449 (N.D. Indiana, April 26, 2010) (citing *Estelle*, 429 U.S. at 107-108). "Deliberate indifference" does not exist merely because McFee disagrees with the course of his treatment, nor does it exist even if there were delays in providing medical care to him, as long as Defendants were otherwise attempting to treat his condition, which they were. *Feeney*, 464 F.3d 162-163.

The record establishes that McFee received frequent medical attention and treatment. McFee's Complaint describes numerous clinical encounters he had with Defendants (and others) at FMC Devens, as well as with outside medical providers.[6] (ECF No. 114 ¶¶ 18, 21-22, 24, 32, 36, 38, 43, 45, 48, 54; SOF ¶ 36). Providing such care generally precludes a finding of deliberate indifference. *Sanchez v. Sabol*, 539 F.Supp.2d 455, 460 (D. Mass. 2008) (stating even if another treatment option may have been preferable, a carefully-monitored treatment plan that has kept an inmate alive precludes a finding of deliberate indifference); *Gusman v. BOP*, 231 Fed.Appx. 179,

---

[6] Although McFee alleges that many of these medical appointments occurred due to various medical providers' failure to adequately treat him, there is no dispute that he received medical treatment both at FMC Devens, and at outside hospitals.

16

181 (3rd Cir. 2007) (no deliberate indifference found where an inmate was provided over 30 appointments with medical staff, was extensively medicated, was seen by a specialist, and received surgical treatment). Indeed, where the overarching gravamen of an inmate's complaint is that BOP staff are not following the direction of outside medical providers, such allegations will not support a finding of deliberate indifference in violation of the Eighth Amendment. *McCusker v. United States*, No. 1:17-cv-11334-DLC (D. Mass. June 24, 2019), Order on Defendants' Motion to Dismiss, ECF No. 99 at 13 (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.")); *see also Layne*, 657 F.2d at 474 (same); *LeBlanc v. Tink,* 923 F.2d 839, 1990 WL 254027, at *4 (1st Cir. Oct. 9, 1990) (same).

And, as set forth above, the objective medical records, created at the time of McFee's medical treatment, document attentive and careful medical treatment that McFee received from Defendants. McFee was provided with extensive treatment for his medical conditions, including visits to outside hospitals and multiple consultations with BOP health care providers. The record before this Court demonstrates continuous and diligent care of McFee and his medical needs: he saw Defendants nearly 80 times over the course of 8 months, Defendants ordered laboratory tests, consultations and medications for McFee (even when he was noncompliant or refused medical treatment), they took steps to remedy McFee's noncompliance with medical care and treatment, and Defendants continually reviewed and co-signed medical notes, even after visits with other providers. As such, McFee fails to demonstrate deliberate indifference under the Eighth Amendment, and judgment must enter in Defendants' favor.

## CONCLUSION

For these reasons, Defendants Lund and Fandreyer request that this Court allow their Motion for Summary Judgment and enter judgment in their favor.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By: */s/ Eve A. Piemonte*
Eve A. Piemonte
Assistant United States Attorney
United States Attorney's Office
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3369
Dated: August 4, 2021     Eve.Piemonte@usdoj.gov

## CERTIFICATE OF SERVICE

I, Eve A. Piemonte, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Eve A. Piemonte*
Eve A. Piemonte
Dated: August 4, 2021     Assistant United States Attorney