UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RICHARD McFEE,
    Plaintiff,

    v.

                          CIVIL ACTION NO. 18-11158-MPK[1]

DR. L. LUND,
FELICITAS FANDREYER, and
STEPHEN SPAULDING,
in their individual capacities,
    Defendants.


MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (#142).


Kelley, U.S.M.J.

    I.    Introduction.

       Richard McFee filed this action while he was in custody at Federal Medical Center (FMC)

Devens, alleging that defendants were deliberately indifferent to his serious medical needs. (#1.)

Counsel was later appointed to represent him and filed a third amended complaint. (#114.) Stephen

Spaulding, Warden of FMC Devens, Berhan S. Yeh, Medical Director of FMC Devens, Felicitas

Fandreyer, a nurse practitioner (NP) at FMC Devens, and Dr. Lucas Lund, a medical provider at

FMC Devens, were named as defendants. *Id*. They filed a motion to dismiss plaintiff's second

amended complaint (#105) based on their immunity from suit, and plaintiff's failure to exhaust

administrative remedies and to state a claim.[2] A report and recommendation that granted the

---

[1] With the parties' consent, this case was assigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c). (#122.)

[2] The parties stipulated that defendants' motion to dismiss would apply to plaintiff's third

motion only with respect to plaintiff's Eighth Amendment deliberate indifference claim against Director Yeh and his First Amendment retaliation claim was adopted. (##115, 118.) The parties then consented to proceed before a magistrate judge and the case was reassigned. (#122.) Currently pending before the court is defendants' motion for summary judgment (#142), which plaintiff opposes (#148.) For the reasons set forth below, defendants' motion is DENIED.

II.   Factual Background.

For purposes of summary judgment, the facts are presented in the light most favorable to plaintiff, the nonmoving party. *Dennis v. Osram Sylvania, Inc.*, 549 F.3d 851, 855 (1st Cir. 2008). The facts below are undisputed unless otherwise indicated.[3]

A.   Medical Conditions.

Plaintiff arrived at FMC Devens on December 12, 2017 and remained there until his transfer to another facility on December 27, 2018. (#149 ¶¶ 1, 22). At times during his incarceration there, he was housed in the Special Housing Unit (SHU). *Id.* ¶ 2. Plaintiff has a history of serious medical and mental health conditions and procedures, including diabetes, Crohn's disease, GERD, rheumatoid arthritis, hypomagnesemia, enterocutaneous fistula short-gut, multiple intestinal surgeries, and psychotropic treatment. *Id.* ¶¶ 3-4.

---

amended complaint. (#111.)

[3] The court takes the facts from defendants' and plaintiff's statements of material facts. (##144, 149.) Defendants did not respond to additional facts that plaintiff provided in his statement. Where supported by the record and in the absence of a response from defendants, the court will determine that material facts presented by plaintiff as being disputed do, in fact, create a genuine dispute for the purposes of summary judgment. *See Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 832 F.3d 1, 15 n.2 (1st Cir. 2016) (deeming distinct facts propounded by opposing party and supported by evidence to have created a dispute and drawing reasonable inferences in favor of opposing party).

Dr. Lund provided medical care for inmates in the SHU, which is where he met plaintiff. (#149 ¶¶ 7-8.) Prior to their first encounter in April 2018, Dr. Lund reviewed plaintiff's medical history. *Id.* ¶¶ 9, 28. He acknowledged that plaintiff has "some serious medical problems." *Id.* ¶ 10. In 2018, NP Fandreyer also treated plaintiff in the SHU. *Id.* ¶¶ 13-15. Like Dr. Lund, NP Fandreyer reviewed plaintiff's medical record when she began treating him and considered him to be "pretty medically complicated." *Id.* ¶ 15. Both Dr. Lund and NP Fandreyer saw plaintiff seventy-seven times between April and December 2018. *Id.* ¶ 28. They visited him during rounds, ordered medications and testing for him, reviewed results from his consultations with medical specialists, and reviewed and co-signed medical records from his visits with other providers. *Id.* ¶ 29.

1.   Hypomagnesemia.

The parties dispute whether plaintiff was compliant with treatment for his hypomagnesemia, or low magnesium. (#149 ¶¶ 15-16, 34.) At one point, he was ordered to receive his magnesium medication for his hypomagnesemia through a "pill line," where a nurse would hand him his medication and watch him take it to ensure that he was compliant. *Id.* ¶ 16; #144-6 at 20. Plaintiff argues that he was compliant, but that the medication in tablet form was ineffective so that it should have been given to him in a different form. (#149 ¶ 16); *see* Ex. A GOV004915 (BOP medical record noting recommendation for liquid magnesium and plaintiff's statement that his magnesium levels had been stable when taking liquid form in the past); *id.* GOV004749 (BOP medical record indicating that plaintiff informed NP Fandreyer of the recommendation for liquid magnesium). NP Fandreyer suggested that plaintiff's compliance with taking magnesium tablets would avoid the need for an infusion, yet one of her notes states that his magnesium levels dropped in spite of his compliance. (#149 ¶¶ 67, 70.) In June 2018, plaintiff fainted due to his low magnesium levels and was hospitalized for a resulting head injury. *Id.* ¶ 69.

After having to leave the SHU to receive infusions of magnesium through urgent care, plaintiff was eventually switched to liquid magnesium in October 2018. (##149 ¶¶ 31, 72; 149-3 at 8-9; Ex. A GOV005757, GOV005761.) Dr. Lund stated during his deposition that there had been nothing preventing him from switching plaintiff to liquid magnesium prior to October 2018. (#149-3 at 8-9.)

2.    Rectal Bleeding.

In September 2017, plaintiff was a victim of sexual assault while incarcerated at FMC Rochester. (#149 ¶ 37.) The assault resulted in injuries to his rectum and anus, which caused rectal bleeding. *Id.* ¶ 38. On his transfer to FMC Devens, plaintiff reported the assault to medical staff. *Id.* ¶ 39. An exam by an NP in April 2018 showed that the skin around his anus was "excoriated," but no internal exam was performed. *Id.* ¶ 41. In May 2018, NP Fandreyer noted that a fecal blood test confirmed his reports of rectal bleeding. *Id.* ¶ 43. Also in May 2018, Dr. Lund noted that plaintiff had "an active rectal lesion" and "scant dried bright red blood per rectum." *Id.* ¶¶ 44-45; Ex. A GOV004817, GOV004842. One day after Dr. Lund recorded seeing blood around plaintiff's rectum, a wound care consultation request was cancelled because "at no time has [plaintiff] offered a complaint" regarding rectal bleeding. (#149 ¶ 46; Ex. A GOV004805.) Dr. Lund cosigned the cancellation request. (#149 ¶ 47.) Yet, the following day, NP Fandreyer noted plaintiff's continued reports of rectal bleeding. *Id.* ¶ 48.

On July 12, 2018, NP Fandreyer again noted that plaintiff reported rectal bleeding. (#149 ¶ 49.) Several days later, NP Eduardo Pereira, who was covering for NP Fandreyer, noted plaintiff's complaints regarding rectal bleeding and conducted an examination which confirmed his reports. *Id.* ¶¶ 51-52. NP Pereira sent plaintiff to the local emergency room, where a perirectal abscess was identified and drained. *Id.* ¶¶ 53, 55. On July 20, 2018, plaintiff reported ongoing

rectal bleeding to NP Fandreyer. *Id.* ¶ 56. Another provider recorded plaintiff's reports of rectal bleeding on August 1, 2018, and sent him to an outside hospital, where he was admitted and remained for eleven days. *Id.* ¶¶ 57-58, 60.

On his return to FMC Devens, NP Fandreyer noted that plaintiff's rectal abscesses had "almost healed" during his hospital stay but that he still had "persistent rectal bleeding." (#149 ¶ 61.) Several months later, in October 2018, Dr. Lund recorded the results of a physical examination which revealed that a new abscess may have been forming. *Id.* ¶ 62.

3.   Reception of Plaintiff's Reports of Medical Symptoms.

On several occasions, Dr. Lund recorded plaintiff's reports of pain and other symptoms alongside notes suggesting that his reports were not credible. (#149 ¶¶ 73-76.) For example, on July 18, 2018, after plaintiff was discharged from the emergency room to drain the abscesses on his rectum, Dr. Lund noted that plaintiff's "very fixed opinions about his health and care are unfortunately incorrect, but held with the strength of delusion." *Id.* ¶ 76; Ex. A GOV005288.

B.   Plaintiff's Complaints About His Medical Care.

The BOP provides a four-step administrative remedy procedure. (#149 ¶ 17.) First, an inmate can informally alert staff to an issue; if that is unsuccessful, then an inmate can submit a formal written remedy request to their warden. *Id.* ¶ 18. Next, an inmate can contest a dissatisfactory response from their warden by appealing to the Northeast Regional Director of the BOP. *Id.* ¶ 19. The final step of the procedure is to appeal to the BOP's Office of General Counsel. *Id.* ¶ 20. Grievances that are processed by BOP staff are entered into the BOP's electronic inmate management system, SENTRY, which tracks the grievance and appeal process. *Id.* ¶ 21.

Plaintiff was able to file seventeen grievances during his time at FMC Devens, including several which went through stages of the appeals process. (#149 ¶ 23.) In April and May 2018,

5

however, plaintiff states that he unsuccessfully attempted to file grievances regarding medical care he felt he was not receiving. *Id.* ¶ 78. Specifically, he alleges that he had to ask the SHU's unit counselors for grievance forms, but at times they refused his requests, saying he had been submitting too many grievances. *Id.* ¶¶ 79-80. Without recourse to a grievance form and without being able to ensure that staff entered into SENTRY those grievance forms he was able to complete, plaintiff contends that he was unable to file a grievance and therefore no record of a grievance exists in SENTRY. *See id.* ¶¶ 21, 23, 81; #149-2 at 12-13 (plaintiff's deposition testimony regarding efforts to file grievances).

Plaintiff commenced this lawsuit on May 25, 2018. (#1.)

III.   Standard of Review.

The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Tobin v. Federal Express Corp.*, 775 F.3d 448, 450 (1st Cir. 2014) (internal citation and quotations marks omitted). "[A] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is inappropriate "if the record is sufficiently open-ended to permit a rational fact finder to resolve a material factual dispute in favor of either side." *Pierce v. Cotuit Fire Dist.*, 741 F.3d 295, 301 (1st Cir. 2014).

The moving party bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003) (citation omitted). A genuine issue of fact exists where a fact finder could find in favor of the non-moving party, "while material facts are those whose existence or nonexistence has the potential to change

the outcome of the suit." *Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014) (internal citation and quotations marks omitted). "Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." *Fontanez-Nuñez v. Janssen Ortho LLC*, 447 F.3d 50, 54-55 (1st Cir. 2006) (internal citation and quotation marks omitted).

In determining whether summary judgment is proper, the court must view the record in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-movant's favor. *Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986).

IV.   Discussion.

Defendants seek summary judgment on two grounds: (1) plaintiff's failure to exhaust his administrative remedies prior to initiating this lawsuit; and (2) plaintiff's inability to support his claim of deliberate indifference because he received some medical care. (#143 at 2.)

A.   Exhaustion.

As in their motion to dismiss, defendants argue that plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA). (#143 at 10.)

7

The PLRA precludes "a prisoner confined in any jail, prison, or other correctional facility" from bringing an action "with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion of available remedies is required for any suit challenging prison conditions, not just for suits under § 1983." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). An inmate's failure to exhaust his administrative remedies may only be excused where the remedy, "although officially on the books," was "unavailable" to him because it was "not capable of use to obtain relief." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). A remedy is "unavailable" such that exhaustion may be excused when, for example, prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

"Exhaustion is an affirmative defense, and thus the burden of showing non-exhaustion is on the defendants." *Russo v. Honen*, 755 F. Supp. 2d 313, 315 (D. Mass. 2010) (citing *Casanova v. Dubois*, 304 F.3d 75, 77-78 (1st Cir. 2002)); *see Jones v. Bock*, 549 U.S. 199, 218 (2007). "At the summary judgment phase, defendants bear the initial burden of showing that plaintiff failed to exhaust generally available administrative remedies." *Czekalski v. Hanks*, No. 18-cv-592, 2020 U.S. Dist. LEXIS 231179, at *35 (D.N.H. Dec. 8, 2020) (citing *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015); *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc); *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)). "Then, 'the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.'" *Id.* (quoting *Albino*, 747 F.3d at 1172).

Plaintiff does not dispute that he failed to exhaust his administrative remedies. (##148 at 8; 149 ¶ 25.) Instead, he alleges that at various times in 2018, including in April and May 2018, staff refused to file grievances on his behalf because they told him he was filing too many grievances. (##149 ¶ 78-81; 149-2 at 12-13.) Defendants submitted SENTRY records which show that plaintiff typically field one grievance per month while at FMC Devens, yet he filed no grievances in April or May 2018, prior to initiating this lawsuit on May 25, 2018. (#106-1.)[4] If admitted, these records and plaintiff's testimony could allow a jury to infer that either plaintiff filed no grievances, as defendants would have it, or that he attempted to file grievances that staff refused to process. Thus, there is a genuine issue of material fact regarding whether plaintiff's efforts to pursue administrative remedies were thwarted, which would excuse his failure to exhaust those remedies. *See Williams v. Gore*, No. 15-cv-654, 2017 U.S. Dist. LEXIS 44835, at *24-25 (S.D. Cal. Mar. 24, 2017) (noting existence of disputed fact as to exhaustion where defendant pointed to absence of grievances in prison records while plaintiff cited his inability to file grievances).

Plaintiff "has produced evidence that, if accepted as true, could prevent defendants from proving that the . . . grievance procedure was available to him . . ., which would excuse him from the exhaustion requirement. For that reason, defendants are not entitled to summary judgment based upon [plaintiff's] failure to exhaust his administrative remedies." *Ojo v. Medic*, No. 11-cv-210, 2012 U.S. Dist. LEXIS 186109, at *26 (D.N.H. Dec. 17, 2012); *see Russo*, 755 F. Supp. 2d at 315 ("Unless, and until, the defendants respond with evidence to the contrary, there remains a

---

[4] Plaintiff argues that the SENTRY records and accompanying affidavit from defendants are inadmissible hearsay. (#148 at 3-6.) In light of its findings in favor of plaintiff, the non-moving party, the court finds it unnecessary to resolve the admissibility of these materials at this stage.

genuine issue of material fact as to whether [plaintiff] was denied access to inmate grievance forms.").

    B.    <u>Deliberate Indifference Claim Under *Bivens*</u>.[5]

    In the absence of a statute authorizing federal courts to hear suits against federal officers who violate the Constitution, the Supreme Court has inferred a narrow cause of action. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Accordingly, the *Bivens* doctrine provides a plaintiff with a cause of action for damages against federal officers in their individual capacities who are acting under color of federal law. *DeMayo v. Nugent*, 517 F.3d 11, 14 (1st Cir. 2008). Here, plaintiff alleges that Dr. Lund and NP Fandreyer, as BOP (federal) employees, violated the Eighth Amendment by refusing to provide him with medical care despite his serious medical needs. (#114 ¶¶ 1, 29, 36.) Defendants counter that plaintiff received adequate and extensive medical care. (#143 at 14.)

    "The Supreme Court has recognized that deliberate indifference on the part of prison staff to the serious medical needs of an inmate can constitute cruel and unusual punishment under the [E]ighth [A]mendment." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)); *Carlson v. Green*, 446 U.S. 14 (1980) (*Bivens* action involving Eighth Amendment violation related to a prison officials' denial of medical care). "[T]o prove an Eighth Amendment violation, a prisoner must satisfy both of two prongs: (1) an objective prong that

---

[5] In a footnote of their memorandum, defendants cite a deliberate indifference case that plaintiff brought in the Western District of Missouri in 2017, and suggest that res judicata may apply. (#143 at 11 n.3 (citing *McFee v. Jordan et al.*, No. 6:17-cv-3140 (W.D. Mo. Jan. 29, 2018)).) Yet each case involves care for different medical treatments by different medical providers at different facilities, therefore res judicata is not an appropriate basis for dismissal. *See Andrews-Clarke v. Lucent Techs., Inc.*, 157 F. Supp. 2d 93, 99 (D. Mass. 2001) (reciting identicality of causes of action and parties as required under res judicata). *Compare* Complaint, *McFee*, No. 6:17-cv-3140 (W.D. Mo. May 12, 2017), ECF No. 1; *with* #114.

requires proof of a serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need." *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014). The objective prong's medical need must "be 'one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990)). For the purposes of summary judgment, defendants concede that plaintiff has met the objective prong of the inquiry. (#143 at 13.)

The second, subjective prong "defines a narrow band of conduct . . . and requires evidence that the failure in treatment was purposeful." *Kosilek*, 774 F.3d at 83 (internal citations and quotation marks omitted). "While deliberate indifference may . . . be exhibited by a wanton disregard to a prisoner's needs, such disregard must be akin to criminal recklessness, requiring consciousness of impending harm, easily preventable." *Id.* (internal citations and quotation marks omitted). "Deliberate indifference does not reside in the doctor's decision not to give the patient therapy which the *patient* thinks he needs. Rather, [courts] will find deliberate indifference only where the prisoner's therapy was 'so clearly inadequate as to amount to a refusal to provide essential care.'" *Fonfrias v. Mora*, No. 91-cv-1392, 1992 U.S. App. LEXIS 9055, at *11-12 (1st Cir. Jan. 15, 1992) (quoting *Layne v. Vinzant*, 657 F.2d 468, 474 (1st Cir. 1981)). "Care is 'essential' when, among other things, 'the potential for harm by reason of delay or denial of medical care [is] substantial,' and 'such harm [does] result.'" *Id.* at *14 (alterations in original) (quoting *Thomas v. Pate*, 493 F.2d 151, 151 (7th Cir. 1974)). Thus, a critical factor in a court's deliberate indifference analysis is the risk of harm to a patient due to the alleged deprivation of care. *Kosilek*, 774 F.3d at 89-90.

Defendants argue that plaintiff received adequate medical care because Dr. Lund and NP Fandreyer treated him on nearly eighty occasions. (#143 at 14, 16 (describing the care provided as "extensive" and "frequent").) In addition, defendants state that plaintiff's disagreement with their choice to provide him with a tablet form of magnesium rather than a liquid form is insufficient to support a claim of deliberate indifference. *Id.* at 16. They do not address plaintiff's allegations that they denied him care for his rectal bleeding, but instead state generally that he received adequate care for his various conditions. *See id.* at 14-17.

With regard to plaintiff's rectal bleeding, defendants do not allege that he received *any* treatment for this condition prior to being sent to the emergency room by NP Pereira in July 2018. This is in spite of plaintiff's repeated complaints about pain and bleeding from that area, which both Dr. Lund and NP Fandreyer noted in his medical records beginning in April 2018. (#149 ¶¶ 42-43, 45, 48-49, 56.) In addition, Dr. Lund co-signed a form cancelling a wound consultation to address plaintiff's rectal bleeding even though he had seen evidence of bleeding during an exam. *Id.* ¶ 46. Ultimately, plaintiff was sent to the emergency room by another provider, where he was treated for rectal abscesses. *Id.* ¶¶ 53, 55. Several weeks later, he was admitted to a hospital for continued treatment. *Id.* ¶¶ 57-58, 60. A jury could make the reasonable inference that care of that condition was essential because harm—a trip to the emergency room and hospitalization—was easily preventable, such that defendants were deliberately indifferent when confronted with his serious medical needs. *See Kosilek*, 774 F.3d at 89-90.[6]

---

[6] Plaintiff argues that NP Fandreyer's and Dr. Lund's frequent references in the medical records to his mental health conditions suggests that they may not have taken his complaints about his health seriously. *See* #148 at 12 n.4; *see, e.g.*, 149 ¶¶ 73-76. Whether that was an appropriate response given his mental health and medical conditions is a question of fact that cannot be resolved at this stage.

Arguably, failure to provide plaintiff with a liquid form of magnesium was a matter of medical opinion or judgment. *See Kosilek*, 774 F.3d at 90 ("The law is clear that where two alternative courses of medical treatment exist, and both alleviate negative effects within the boundaries of modern medicine, it is not the place of our court to 'second guess medical judgments' or to require that [providers] adopt the more compassionate of two adequate options."). Yet this case is distinguishable from those in which a difference of opinion as to medical treatment resulted in no harm to a patient. *See Fonfrias*, 1992 U.S. App. LEXIS 9055, at *14 ("[Plaintiff] may have needed a surgical procedure, but the record does not suggest that the delay in choosing the better procedure raised the potential for harm or in fact caused any harm."); *Sires*, 834 F.2d at 13 (noting that despite plaintiff's allegations that medical staff did not provide him with care, "[h]e does not, however, show any ill effects from this deprivation").

Plaintiff's hypomagnesemia was not alleviated with the tablet form of magnesium, which led to instances of fainting and resulting injuries, as well as more invasive treatment through infusions.[7] (#149 ¶ 67, 69-70.) He requested a liquid form of magnesium, notes from an outside provider suggested a liquid form, and Dr. Lund acknowledged that there was nothing preventing him from making the switch. *Id.* ¶ 16; #149-3 at 8-9. A jury could reasonably infer that defendants' refusal to provide plaintiff with liquid magnesium, in light of the inadequacy of the tablet form in addressing his condition and the resulting harm, amounted to deliberate indifference through a refusal to provide essential care for his serious medical condition. *See Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir. 1991) ("[D]eliberate indifference may be found where the attention

---

[7] Although the parties dispute whether plaintiff was consistently compliant with his magnesium medication when taken in tablet form, on at least one occasion NP Fandreyer noted that despite his compliance with the tablets, he required an infusion. (#149 ¶ 70.)

received is 'so clearly inadequate as to amount to a refusal to provide essential care.'" (quoting *Miranda v. Munoz*, 770 F.2d 255, 259 (1st Cir. 1985))).

Dr. Lund's and NP Fandreyer's treatment of some of plaintiff's serious medical conditions is insufficient to demonstrate that they provided any or sufficient treatment as to his rectal bleeding and hypomagnesemia, particularly where genuine disputes of material fact remain. Viewing the record in the light most favorable to plaintiff and drawing all reasonable inferences in his favor, defendants' motion for summary judgment must be denied. *See Ahmed*, 752 F.3d at 495.

V.   Conclusion.

For the reasons stated, defendants' motion for summary judgment (#142) is DENIED.

November 15, 2021                           /s/ M. Page Kelley
                                            M. PAGE KELLEY
                                            United States Magistrate Judge